■ CRT INVESTMENTS, LIMITED, et al., Appellants, v BDO SEIDMAN, LLP, et al., Respondents, et al., Defendants. [925 NYS2d 439]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered May 21, 2010, dismissing the complaint against defendants BDO Seidman, LLP and BDO Tortuga, and bringing up for review an order, same court and Justice, entered May 7, 2010, insofar as it granted said defendants' motions to dismiss the complaint, unanimously affirmed, with costs. Appeal from the order, entered May 7, 2010, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This litigation arises out of plaintiffs' investment in the Ascot Fund, Limited, a Cayman Islands hedge fund audited by BDO Tortuga, which was a "feeder fund" for Ascot Partners, L.P., a New York hedge fund audited by BDO Seidman. Plaintiffs asserted causes of action for fraud, aiding and abetting fraud, negligence, and gross negligence against these outside auditors for failing to disclose that the fund was ultimately managed by Bernard Madoff.

Plaintiffs failed to meet their burden of demonstrating the existence of personal jurisdiction over BDO Tortuga under New York's long arm statute (*Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 95 [2010]). Plaintiffs failed to rebut defendant's affidavit (*see Roldan v Dexter Folder Co.*, 178 AD2d 589, 590 [1991]), which established that BDO Tortuga has no presence in New York, that it performed the audit of the Ascot Fund in the Cayman Islands, pursuant to engagement letters executed in, and sent from, the Cayman Islands, and that there were only limited e-mails with anyone in New York "affiliated in any way with Ascot Fund." Although plaintiffs argue that BDO Tortuga relied upon the audit work that BDO Seidman had performed with respect to the existence and valuation of Ascot Partners and Ascot Fund's investments, there is no basis to conclude that BDO Tortuga should have reasonably expected to defend its actions in New York (*see Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 466 [1988]). All of the relevant parties to the cause of action (plaintiff, defendant, and audit client), and all of the work that BDO Tortuga performed were in the Cayman Islands. Nor does sending a few e-mails and engagement letters into New York alter this result (*see Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d 433, 434 [2006], *lv denied* 9 NY3d 803 [2007]).

Plaintiffs' alternative argument, that BDO Tortuga is subject to personal jurisdiction under CPLR 302 (a) (3), is also unavailing. In the context of a commercial tort, where the damage is

solely economic, the situs of commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred (*see O'Brien v Hackensack Univ. Med. Ctr.*, 305 AD2d 199, 201-202 [2003]; *Mid-Atlantic Residential Invs. Ltd. Partnership v McGuire*, 166 AD2d 205, 206-207 [1990]). Plaintiffs' claim that they were sold the investment in New York is irrelevant, because the injury did not arise out of their purchase of the investment here, but, rather, out of BDO Tortuga's alleged failure to appropriately perform its audit services. Defendants' affidavit also established that BDO Tortuga did not derive "substantial revenue" from interstate or international commerce (*see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214 [2000]).

Plaintiffs have failed to state a claim against BDO Seidman for fraud, aiding and abetting fraud and negligent misrepresentation. Although an intent to commit fraud is divined from the surrounding circumstances, this does not mean "constructive knowledge, but actual knowledge of the fraud as discerned from the surrounding circumstances" (*Oster v Kirschner*, 77 AD3d 51, 56 [2010]). Plaintiffs' allegations of generally accepted auditing standards violations "without corresponding fraudulent intent" are insufficient to state a securities fraud claim against an independent accountant (*Rothman v Gregor*, 220 F3d 81, 98 [2d Cir 2000] [internal quotation marks omitted]). "[S]ubstantial assistance," a necessary element of aiding and abetting fraud, means more than just performing routine business services for the alleged fraudster (*see Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 AD3d 1, 11 [2008]). The complaint fails to plead a factual basis for inferring that BDO Seidman did anything more than perform the routine business of auditing. Where, as here, direct contact between the accountant and the plaintiff is minimal or nonexistent, the plaintiff cannot recover for the accountant's alleged negligence (*see e.g. Security Pac. Bus. Credit v Peat Marwick Main & Co.*, 79 NY2d 695, 706 [1992]). The fact that plaintiffs were entitled to and received a copy of the audited financial statements, or that BDO Seidman knew that the investors would rely upon the information contained in the financial statements, does not establish the requisite linking conduct (*see Houbigant, Inc. v Deloitte & Touche*, 303 AD2d 92, 94-95 [2003]). BDO Seidman's work in the course of the audit was performed pursuant to professional standards applicable in the context of any audit, and was not undertaken pursuant to any specific duty owed to plaintiffs (*id.*). Therefore, plaintiffs cannot establish the direct nexus necessary to give them a claim against BDO Seidman for negligent misrepresentation. Concur—Gonzalez, P.J., Tom, Friedman, Catterson and Richter, JJ.